IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TANIUM INC.,

      Plaintiff,

v.

MAX YAGO and WIZ, INC.,

      Defendants.

CIVIL ACTION FILE

NO. 1:21-CV-1867-MHC

## ORDER

    This case comes before the Court on Defendants Max Yago ("Yago")'s and

Wiz, Inc. ("Wiz")'s Motion to Dismiss ("Defs.' Mot. to Dismiss") [Doc. 45].

## I.    BACKGROUND[1]

---

[1] Because this case is before the Court on a motion to dismiss, the facts are presented as alleged in Plaintiff's Amended Verified Complaint for Injunctive Relief and Damages ("Am. Compl.") [Doc. 37].  See Silberman v. Miami Dade Transit, 927 F.3d 1123, 1128 (11th Cir. 2019) (citation omitted).  Although the Court previously denied Plaintiff Tanium, Inc. ("Tanium")'s Motion for Emergency Injunctive Relief in this case based in part upon evidence presented at the preliminary injunction hearing (see Tr. of July 1, 2021, Prelim. Inj. Hr'g [Doc. 60]; July 28, 2021, Order [Doc. 70]), the Court is limited in its consideration of the motion to dismiss upon the facts as alleged in the Amended Complaint.

A.    The Business of Tanium and Wiz

Tanium is a cybersecurity and systems management company, headquartered in California, which provides its customers with, among other things, security products that detect, react to, and remediate a breach of a company's information technology infrastructure, including "end user, service, and cloud endpoints (devices)." Am. Compl. ¶¶ 17-18. Tanium alleges that it has accumulated and maintained certain proprietary business information regarding Tanium's business relationships with its customers, customer/client lists and contact information, volume of business, and business plans (hereinafter referred to as "Confidential Information"). Id. ¶ 19. Tanium also alleges that the Confidential Information was developed "through extensive time, labor, skill, and money," is "not available publicly and would require a substantial amount of time and effort to develop independently or reverse engineer," and "a significant portion of the Confidential Information was gathered over the course of long-standing relationships with customers and would be impossible to develop independently[.]" Id. ¶ 20.

Tanium has implemented numerous physical safeguards to protect its Confidential Information. Id. ¶ 22. Tanium also requires its employees to sign

agreements regarding the duty of protect Tanium's Confidential Information, and maintains numerous policies to protect its Confidential Information.  Id. ¶¶ 23-24.

Wiz also is a company in the cybersecurity industry, "provid[ing] customers with computer and electronic security products to identify and remediate potential risks in systems."  Id. ¶ 39.  Tanium alleges that "Wiz manages and protects cloud-based endpoints, providing similar capabilities such as vulnerability and patch management, configuration management, and inventory and asset management which are key features offered through Tanium products."  Id.  Tanium further alleges that "Wiz's product offerings appear to be a substitute for Tanium's products."  Id.  Tanium also alleges:

> There is overlap with Tanium from a cloud infrastructure (i.e., servers) perspective: (a) Wiz's Vulnerability and Patch Management is similar to Tanium Comply and Tanium Patch; (b) Wiz's Secure configuration is similar to Tanium's Configuration Management/Enforce; and (c) Wiz's Lateral Movement risk identification is similar to Tanium's "Impact" capabilities in its core platform.

Id.

## B.    Yago's Employment with Tanium

Yago was an employee of Tanium from October 2015, until February 2021.  Am. Compl. ¶ 26.  Tanium alleges that Yago had various roles in increasing responsibility throughout his time at Tanium, and he ultimately was responsible for servicing Tanium's "enterprise accounts," meaning the largest Fortune 1000

customers.  Id.  According to Tanium, at the time of Yago's resignation, he was responsible for over $2,000,000.00 in renewable business.  Id.

When he was hired by Tanium, Yago was required to sign an Employee Invention Assignment and Confidentiality Agreement ("2015 EIACA").  Am. Compl. ¶ 28; 2015 EIACA [Doc. 37-1 at 59-71[2]].  In 2019, Yago became eligible to receive an additional equity award, for which he was required to sign a second agreement, the "2019 EIACA."  Am. Compl. ¶ 29; 2019 EIACA [Doc. 37-1 at 73-86].  The 2019 EIACA, which Yago signed on September 15, 2019, provided, in pertinent part as follows:

> **I.** Duties. In return for the compensation and benefits now and hereafter paid or provided to me, I, agree to perform those duties for Company as Company may designate from time to time.  During my employment with Company, I further agree that I will (i) devote my best efforts to the interests of Company, and (ii) not engage in any other employment or activity that would divert from the Company any business opportunity in which the Company can reasonably be expected to have an interest, and (iii) not engage in other employment or in any conduct that could either be in direct conflict with Company's interests or that could cause a material and substantial disruption to Company and its business or would directly compete with, or involve preparation to compete with, the current or future business of the Company, and . . .
>
> **II.**    Proprietary Information Definition. I understand that my employment by the Company creates a relationship of confidence and

---

[2] This Court considers the documents attached to the Amended Complaint in addition to the facts as alleged in the Amended Complaint.  Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007).

trust with respect to any information or materials of a confidential or secret nature. "**Proprietary Information**" means (a) any information that is confidential or proprietary, technical or non-technical information relating to the current or anticipated future business of the Company or of any parent, subsidiary, affiliate, customer or supplier of the Company, including for example and without limitation, information that is a Company Innovation or is related to any Company Innovations (as defined in Section 5 below), concepts, techniques, processes, methods, systems, designs, computer programs, source documentation, trade secrets, formulas, development or experimental work, hardware configuration information, work in progress, forecasts and other financial information, current, proposed and future products, marketing plans, business plans, customers and suppliers and any other nonpublic information that has commercial value . . . . Proprietary Information also includes all information of which the unauthorized disclosure could be detrimental to the interests of Company, whether or not such information is identified as Company Proprietary Information. Notwithstanding the foregoing, Company Proprietary Information shall not include any such information which I can establish (i) was publicly known or made generally available prior to the time of disclosure by Company to me; (ii) becomes publicly known or made general available after disclosure by Company to me through no wrongful action or omission by me; or (iii) is in my rightful possession without confidentiality obligations, at the time of disclosure by Company as shown by my then contemporaneous written records.

**III.**    Ownership and Nondisclosure of Proprietary Information. All Proprietary Information and all worldwide patents (including, but not limited to, any and all patent applications, patents, continuations, continuation-in-parts, reissues, divisionals, substitutions, and extensions), copyrights, mask works, trade secrets and other worldwide intellectual property and other rights in and to the Proprietary Information are the property of Company, or its subsidiary, related or affiliated entities or Company's assigns, as applicable. I will use reasonable care to protect the confidentiality and security of Proprietary Information and use Proprietary Information only as necessary and authorized to perform my duties as an employee of Company. I will disclose Proprietary Information only to those individuals within

Company who are authorized to receive it. To the fullest extent permitted by law, I will not disclose any Proprietary Information to anyone outside Company, except to the extent it is expressly authorized by Company to further the business interests of Company.

. . .

**XVII**.  <u>No Interference with Company's Business by Solicitation of Employees or Customers</u>. During my employment with Company and for 12 months thereafter, I will not interfere with Company's business by soliciting, encouraging, or causing others to solicit or encourage any employees of Company to terminate their employment with Company. In addition to the foregoing, during my employment with the Company, and for a period of 12 months following my last day of employment with the Company, I will not directly or indirectly, solicit, encourage or cause any current customer of the Company or its subsidiaries to terminate or modify its relationship with Company or any subsidiary, or otherwise divert its business from the Company or any subsidiary, for any reason.

**XVIII**. <u>Non-Compete</u>. During my employment with the Company, and for a period of 12 months following my last day of employment with the Company, I will not directly or indirectly, engage in any business that, as of my last day of employment, is the same as, or competitive with, the business of the Company, in the cities, counties or other geographic areas anywhere in which the Company or its subsidiaries carries on their respective businesses, to the fullest extent permitted by law. I agree that this restriction is necessary to protect the legitimate business interests of the Company, given the nature of my position and my access to the Company's confidential information and trade secrets during my employment. The provisions of Section 17 and 18 shall not apply to the extent prohibited by applicable state law.

2019 EIACA.

While employed at Tanium, Yago was provided with access to Tanium's

Salesforce customer database, which is "a repository for all of Tanium's customer

data and customer transaction history." Am. Compl. ¶ 34.  Information contained in this database includes information on customer contacts, customer decision-makers, and customer organizational charts.  Id.

On January 22, 2021, Yago accepted an offer of employment with Wiz.  Id. ¶ 36.  Yago gave notice to Tanium on January 29, 2021, and his resignation date was set for February 12, 2021.  Id. ¶ 37.

## C.    Alleged Misappropriation and Solicitation

Beginning in late January 2021, Wiz hired four high-level Tanium employees: Yago, William Masturzo ("Masturzo"), Thomas Finnerty ("Finnerty"), and Christopher Klein ("Klein").  Am. Compl. ¶¶ 6, 40.  Masturzo was a Tanium Enterprise Account Manager and Director of Strategic Accounts based in New Jersey from October 2015, until March 1, 2021, when he left to work at Wiz as an Enterprise Account Executive in the same territory as he worked while employed by Tanium.  Id. ¶ 41.  At the time he left Tanium, Masturzo was responsible for $5,000,000.00 in renewable business.  Id.  Finnerty was a Tanium Director of Strategic Accounts based in the state of Washington from May 2016, until March 12, 2021, when he left to work at Wiz as an Enterprise Account Executive in the same territory as he worked while employed by Tanium.  Id. ¶ 42.  At the time he left Tanium, Finnerty was responsible for $10,000,000.00 in renewable business.

Id. Klein was a Tanium Director of Strategic Accounts based in New York from March 2016, until April 9, 2021, when he left to work at Wiz as an Account Executive in the same territory as he worked while employed by Tanium. Id. ¶ 43. At the time he left Tanium, Klein was responsible for $8,000,000.00 in renewable business. Id.

### 1.    Alleged Misappropriation of Trade Secrets by Yago

On January 26, 2021, four days after accepting Wiz's offer of employment, Yago accessed Tanium's Salesforce database and "created a custom report of information for Tanium's customers in Georgia, Florida, Alabama, Tennessee, Texas, Oklahoma, and Louisiana," despite the fact that Yago was not assigned to service the majority of the customers appearing on this report. Id. ¶¶ 48, 56. On the same day, Yago ran a similar report consisting of information for Tanium's customers in New York, New Jersey, Connecticut, and Pennsylvania. Id. ¶ 56. That same day, Yago also notified Masturzo that he downloaded more than 60,000 contacts and sent one of the reports to Masturzo. Id. ¶¶ 55-57. Yago ran a third similar report on February 8, 2021, for Tanium customers in Connecticut, Massachusetts, New Hampshire, Maine, Vermont, Rhode Island, and New York. Id. ¶ 65. This report was intended for Klein. Id.

### 2.    Solicitation of Employees by Yago

On February 1, 2021, Yago again texted Masturzo, saying, "Talked to Finnerty.  I think we can get him," to which Masturzo responded, "Yep.  He would be a HUGE get."  Id. ¶ 59.  Masturzo texted, "I am also trying for Chris Klein for New England," to which Yago replied, "Yeah who wouldn't want those guys," to which Masturzo responded, "Steak [sic] away Tanium's top 5-6 reps lol . . . Orion will love us."  Id.  Later that day, Yago texted Masturzo after his exit interview at Tanium, "He asked if any other reps were leaving . . . I said I don't know . . . going to be awkward when 4 guys leave for Wiz lol."  Id. ¶ 64.

Tanium alleges that Yago has also solicited at least three other employees for employment opportunities at Wiz: Ben Brigham, Brian Crockford, and Jamie Darragh, one of whom is now a Wiz employee.  Id. ¶ 60.  Tanium further alleges that Yago and Masturzo reported on the success of their solicitation efforts to Jordan King, Wiz's Director of Enterprise Accounts.  Id. ¶ 61.

### 3.    Solicitation of Customers by Yago

Tanium also alleges that Yago began soliciting customers on behalf of Wiz while still employed with Tanium.  Id. ¶ 66.  On February 4, 2021, Yago reached out to Ralph Lauren to set up a demonstration of Wiz's product offerings.  Id. ¶ 66.  Yago attempted to get a Wiz e-mail account on February 5, 2021, to purportedly

schedule meetings with prospective customers for Wiz while still on Tanium's payroll. Id. ¶ 67.  Tanium also alleges that, at the time Delta was an active prospective customer for Tanium, Yago accessed Delta's customer account screen prior to his departure for Wiz. Id. ¶ 69.

### D.    Yago's Departure and Tanium's Investigation

Upon Yago's departure from Tanium on February 12, 2021, Yago began working for Wiz as an Enterprise Account Executive in the same territory as he worked when he was employed by Tanium. Id. ¶¶ 72-73.  After Yago, Masturzo, Klein, and Finnerty all resigned from Tanium and accepted employment with Wiz within a similar time frame, Tanium conducted an investigation of Yago's laptop and discovered the series of text messages regarding his solicitation efforts. Id. ¶¶ 74, 76.

### E.    The Filing of the Amended Complaint

On May 5, 2021, Tanium filed its Verified Complaint [Doc. 1], which it later amended on June 22, 2021.  See Am. Compl.  The Amended Complaint brings the following claims: (1) trade secret misappropriation/conspiracy to misappropriate trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, against Yago and Wiz (Count I); (2) trade secret misappropriation/conspiracy to misappropriate trade secrets under the Georgia Trade Secrets Act ("GTSA"),

O.C.G.A. § 10-1-761, against Yago and Wiz (Count II); (3) breach of contract against Yago (Count III); (4) tortious interference with contract against Wiz (Count IV); (5) unlawful interference with contractual and business relations against Yago and Wiz (Count V); and (6) recovery of litigation expenses and attorneys' fees under O.C.G.A. § 13-6-11, against Yago and Wiz (Count VI). Id. ¶¶ 89-148.

F.    **New Jersey Lawsuit**

On April 19, 2021, prior to the filing of its action in this Court, Tanium filed a complaint against Wiz and former Tanium employee Masturzo in the Chancery Division of the Superior Court of New Jersey.  See Tanium Inc. v. William Masturzo and Wiz, Inc., Case No. HUD-C-54-21 (N.J. Ch. 2021) ("Tanium I") [Doc. 35-1 at 3-30].  The underlying claims in Tanium I include misappropriation of trade secrets and Confidential Information, breach of contract, tortious interference with contract, and unlawful interference with contractual relations. Id. On May 5, 2021, Tanium amended its complaint in Tanium I with additional allegations against Wiz and Masturzo ("Tanium I Compl.") [Doc. 35-1 at 32-64]. On that same day, Tanium filed this action ("Tanium II"), which it later amended on June 22, 2021, to duplicate theories and factual allegations against Wiz. See Am. Compl.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted). Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all well-pleaded facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). Not only

must the court accept the well-pleaded allegations as true, but these allegations must also be construed in the light most favorable to the pleader. Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011). However, the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678. Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## III.    DISCUSSION

Defendants move to dismiss: (1) the five claims asserted against Wiz (Counts I, II, IV, V, and VI) as violating the doctrine against claim-splitting; (2) Counts III, IV, and V as not sufficiently pleaded; and (3) each of Tanium's tort claims and Count VI because they are preempted by the GTSA. Defs.' Mot. to Dismiss 1-2.

### A.    The Doctrine of Claim-Splitting Warrants Dismissal of Counts I, II, IV, V, and VI Against Wiz.

Defendants argue that all counts against Wiz should be dismissed under the doctrine of claim-splitting based on the earlier-filed Tanium I case in New Jersey against Wiz. Defs.' Mot. to Dismiss at 8-16. Defendants argue that the two actions contain over eighty identical or nearly-identical allegations. Id. at 10. Tanium responds that claim-splitting should not apply given the claims do not arise

13

from the same transaction or series of transactions.  Pl.'s Resp. in Opp'n to Defs.'

Mot. to Dismiss ("Tanium's Resp.") [Doc. 71] at 5-9.

### 1.    The Two-Prong Test of the Claim-Splitting Doctrine

"The 'claim splitting doctrine' applies where a second suit has been filed

before the first suit has reached a final judgment."  Vanover v. NCO Fin. Servs.,

Inc., 857 F.3d 833, 840 n.3 (11th Cir. 2017) (citing Zephyr Aviation III, L.L.C. v.

Keytech Ltd., No. 8:07-CV-227-T-27TGW, 2008 WL 759095, at *6 (M.D. Fla.

Mar. 20, 2008)).  "Claim-splitting has been analyzed as an aspect of res judicata or

claim preclusion."  Id. at 841.  "While claim-splitting and res judicata both

promote judicial economy and shield parties from vexatious and duplicative

litigation, 'claim splitting is more concerned with the district court's

comprehensive management of its docket, whereas res judicata focuses on

protecting the finality of judgments.'"  Id. (quoting Katz v. Geraldi, 655 F.3d 1212,

1218 (10th Cir. 2011)).  In Vanover, the Eleventh Circuit expressed agreement

with the approach of the Tenth Circuit in Katz, which stated that the test for claim-

splitting "is not whether there is finality of judgment, but whether the first suit,

assuming it were final, would preclude the second suit."  Id. (quoting Katz, 655

F.3d at 1218).

The Eleventh Circuit approved the following two-factor analysis for claim-splitting:

> (1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions.   Successive causes of action arise from the same transaction or series of transactions when the two actions are based on the same nucleus of operative facts.

Id. at 841-42 (citations, quotation marks, and alterations omitted).  Claims will not be part of the same nucleus of operative fact if they are instead "new and independent."  Id. at 842 (citations omitted).

Claim-splitting bars subsequent claims if they are rooted in the same actions as claims in another suit.  Shannon v. Nat'l R.R. Passenger Corp., 780 F. App'x 777, 779 (11th Cir. 2019).  Said another way, a claim is not new and independent if it involves "separate instances of the same course of conduct."  Mohamad v. HSBC Bank N.A., No. 6:16-cv-2239-Orl-41DCI, 2018 WL 8576597, at *4 (M.D. Fla. Mar. 27, 2018) (citations and quotations omitted) (holding the claim-splitting doctrine applied where the original lawsuit involved violations that occurred March through December of 2016, while the second lawsuit involved the different instances of the same conduct in January through April of 2017).  This will likely be evidenced by a failure to use different language, with these claims often repeating "language verbatim in numerous paragraphs . . . ."  Shannon, 780 F.

15

App'x at 779; see also Mohamad, 2018 WL 8576597, at *3 ("Furthermore, the

majority of the factual allegations asserted in the State Court Complaint are

identical to the factual allegations in the SAC.").   Courts can further determine

whether claims are based the same nucleus of operative fact by weighing whether

the claims "are related in time, space, origin, or motivation, whether they form a

convenient trial unit, and whether their treatment as a unit conforms to the parties'

expectations or business understanding or usage."   Vanover, 857 F.3d at 842

(citing Petro-Hunt, 365 F.3d at 396).[3]

There is no dispute that both Tanium I and Tanium II were filed against Wiz,

which satisfies the first prong in the claim-splitting analysis.   And the Court finds

that the claims also satisfy the second prong of the claim-splitting test because they

_____

[3] Several counterarguments to the application of the claim-splitting doctrine have
also been rejected in this circuit.   For instance, the mere presence of different
causes of action that relate to the same facts does not preclude application of the
claim-splitting doctrine.   Shannon, 780 F. App'x at 779; Vanover, 857 F.3d at 843.
Nor has the Eleventh Circuit taken issue with the inclusion of new facts in the
second suit that do not change the "essential nature of [the] claims."   Rumbough v.
Comenity Cap. Bank, 748 F. App'x 253, 256 (11th Cir. 2018).   Claim-splitting also
has been applied when the initial case is filed in state court and the subsequent suit
is filed in federal court.   IOU Cent., Inc. v. Pezzano Contracting & Dev., LLC, No.
1:19-CV-4882-TCB, 2020 WL 8768632, at *5 (N.D. Ga. Sept. 28, 2020); see also
Mohamad, 2018 WL 8576597, at *3 ("As an initial matter, the fact that the State
Court Complaint seeks relief under the FCCPA and that the SAC seeks relief under
the FDCPA does not preclude the application of the claim-splitting doctrine.").

arise from "the same nucleus of operative fact."  Indeed, Tanium concedes that "there are some overlapping facts between the New Jersey action and the present dispute" and "Yago and Masturzo conspired to steal Tanium's Confidential Information and solicit Tanium employees and customers."  Tanium's Resp. at 6. The only distinction cited by Tanium is that Tanium I focused on a different former Tanium employee's alleged theft of Confidential Information and breach of contract and Wiz's purported interference with contractual relations.  Id. at 6-7. Tanium contends that if Wiz interfered with a dozen additional contracts between Tanium and a dozen former employees, then a dozen additional lawsuits may be appropriate.  Id. at 9.  But the issue here is not how many different lawsuits can be filed against individual employees, but whether the claim-splitting doctrine prevents the assertion of the same causes of action filed in Tanium II against Wiz. The purported theft of Confidential Information and the solicitation of customers and employees from Tanium that are alleged in Tanium II arise from the same series of transactions that form the basis of all of the underlying claims against Wiz in Tanium I, thereby satisfying the second prong of the claim-splitting test. Compare Tanium I Compl. ¶¶ 6-7, 22-51 with Tanium II Am. Compl. ¶¶ 2-8; 26-65.

### 2.       Claim-Splitting Bars All Claims Against Wiz.

In general, the Court notes that Tanium I and Tanium II were filed within two weeks of each other, both allege violations of misappropriation and tortious interference, both are motivated by Wiz purportedly using Tanium's employees in a singular scheme to obtain information about Tanium's customers, and both contain significant portions of identical language forming the allegations.

### a.       Counts I and II

The complaints in both Tanium I and Tanium II contain two counts of misappropriation.  Compare Tanium I Compl. at 24-25 with Am. Compl. at 36-41. Yet the facts supporting these claims in Tanium I and Tanium II make no distinction in the way that Wiz acted, with Tanium I focusing on the conduct of Masturzo, see, e.g., Tanium I Compl. ¶¶ 6, 36-37, 59, and Tanium II focusing on the conduct of Yago.  See, e.g., Am. Compl. ¶¶ 6, 36-37, 40, 47-62.  In fact, both complaints include the exact same allegation asserting the exact same plan for Wiz: "Wiz's plan is clear.  Wiz intends to unlawfully compete with Tanium by raiding its workforce, taking advantage of its Confidential Information, customer relationships, and goodwill, and unfairly diverting Tanium's business opportunities to Wiz."  Tanium I Compl. ¶ 7; Am. Compl. ¶ 7.  Tanium II further alleges that "Wiz's clear plan is to place these sales executives, armed with Tanium's

18

Confidential Information, in similar roles and territories to unfairly target Tanium's clients and divest business opportunities to Wiz," revealing Wiz was using both Yago and Masturzo in the same way. Am. Compl. ¶¶ 40, 88. Tanium II alleges that Yago, Masturzo, and Wiz were all acting in concert to procure Tanium's trade secrets. Id. ¶¶ 97, 108. Both complaints also use the language of conspiracy, with Tanium I alleging that "Masturzo conspired with Wiz and Max Yago," Tanium I Compl. ¶ 6, while the Tanium II Complaint says "Yago began misappropriating Tanium's confidential information; conspiring with, and assisting, Masturzo to misappropriate Tanium's confidential information; recruiting Tanium employees to Wiz; and soliciting clients on behalf of Wiz." Am. Compl. ¶ 47. Tanium's allegations in this case portray the acts as part of a singular unit, grouping together its Confidential Information concerns with respect to all employees that had left. Id. ¶ 84 ("Tanium also expressed concern that Wiz and Tanium's former employees were improperly using Tanium's Confidential Information."). The Court finds this demonstrates the misappropriation claims against Wiz in both Tanium I and Tanium II involve the same purported conduct exercised by Wiz through the actions of two employees working in harmony. See Shannon, 780 F. App'x at 779; Mohamad, 2018 WL 8576597, at *4.

The actions in <u>Tanium I</u> and <u>Tanium II</u> also allege a common motivation between Yago's, Masturzo's, and Wiz's alleged wrongful conduct, characterizing their acts as a singular effort "to unfairly solicit customers away from Tanium, using Tanium's confidential information in connection therewithin," then going on to draw further comparison between Yago and Masturzo by saying they were both some of the "highest-level sales employees responsible for Tanium's largest customers." <u>Tanium I</u> Compl.¶ 6; Am. Compl. ¶ 6. <u>See e.g.</u>, <u>Kennedy v. Floridian Hotel, Inc.</u>, 998 F.3d 1221, 1236 (11th Cir. 2021) ("The district court did not abuse its discretion in dismissing Count II for improper claim splitting because Count II and <u>Floridian I</u> arise from the same transaction—Kennedy's use of Floridian's ORS—and are based on facts that are sufficiently related in time, space, origin, and motivation."). Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Counts I and II against Wiz.

### b.    Count IV

Both <u>Tanium I</u> and <u>Tanium II</u> include a claim for tortious interference of contract against Wiz, making identical allegations—only substituting Yago's name for Masturzo in <u>Tanium II</u>. <u>Tanium I</u> Compl. ¶¶ 112-121; Am. Compl. ¶¶ 128-

138.[4]  Tanium's only response to Defendants' argument is that <u>Tanium II</u> is based

on Wiz's interference with Tanium's contract with Yago, while <u>Tanium I</u> is based

on Wiz's interference with Tanium's contract with Masturzo.  While the Court

recognizes there were separate contracts, the Court still finds the claims in this case

are not independent from <u>Tanium I</u> because the acts of Masturzo, Yago, and Wiz,

which give rise to a tortious interference with contract claim are, at the very least,

"separate instances of the same course of conduct," but arguably part of the same

transaction or series of transactions.  <u>See</u> <u>Vanover v. NCO Fin. Sys., Inc.,</u> No.

8:15-CV-1434-T-33EAJ, 2015 WL 13540996, at *5 (M.D. Fla. Oct. 28, 2015),

<u>aff'd sub nom.</u> <u>Vanover</u> , 857 F.3d at 833 ("While the calls by NCO in <u>Vanover II</u>

could amount to additional violations of the law, these violations are not

independent from the claims at issue in <u>Vanover I</u>.").  Accordingly, the Court

**GRANTS** Defendants' Motion to Dismiss Count IV against Wiz.

---

[4] <u>Tanium II</u> includes only one allegation that is not present in <u>Tanium I</u>.  <u>See</u> Am.
Compl. ¶ 133 ("Upon information and belief, Wiz has intentionally and
maliciously interfered with the obligations of Yago under his agreement with
Tanium by engaging him in a  sales role and encouraging him to use Tanium's
Confidential Information and solicit Tanium's employees and customers in
violation with his agreement with Tanium.").

c.    **Count V**

Tanium's only objection to dismissal of Count V against Wiz is that <u>Tanium</u> <u>II</u> is based on Wiz and Yago's use of Tanium's Confidential Information to compete with Tanium and interfere with Tanium's customer relationships, while <u>Tanium I</u> was based on Wiz and Masturzo's use of Confidential Information to compete with Tanium and interfere with Tanium customers.  Tanium's Resp. at 7-8.  Again, missing here is any suggestion that Wiz's actions with respect to its interference with business or contractual relationships is based on different facts in <u>Tanium I</u> than <u>Tanium II</u>.  Instead, the basis for business interactions, "utiliz[ing] Tanium's Confidential Information to compete with Tanium and wrongfully interfere with ongoing customer contractual and business relationships it worked hard to establish," is the same conduct for both complaints.  <u>Tanium I</u> Compl. ¶ 123; Am. Compl. ¶ 140.  For the same reasons discussed above, the Court therefore **GRANTS** Defendants' Motion to Dismiss Count V.

d.    **Count VI**

Count VI asserts a derivative claims for attorney's fees.  Am. Compl. ¶¶ 146-148.  Because all underlying claims against Wiz are barred by the claim-splitting doctrine, Count VI must also be dismissed with respect to Wiz.  <u>See</u> <u>Stuart</u> <u>v. Hatcher</u>, 757 F. App'x 807, 811 n.* (11th Cir. 2018); <u>Barnett v. MacArthur</u>, 715

F. App'x 894, 902 (11th Cir. 2017) ("[R]emedies are not separately enforceable from their underlying claims.").

**B.      Tanium's Breach of Contract Claim Against Yago is Properly Pleaded.**

Tanium's breach of contract claim against Yago is based on allegations that he violated his obligations under the 2019 EIACA (1) to protect and not use or disclose Confidential Information, (2) not to solicit Tanium's employees, and (3) not to solicit or divert Tanium's customers for a period of twelve months after his employment with Tanium.  Am. Compl. ¶¶ 103-18.  "The elements of a breach of contract claim in Georgia are the: (1) breach and the (2) resultant damages (3) to the party who have the right to complain that the contract being broken.  Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126, 1130 (11th Cir. 2014) (citation and quotation omitted).  "A breach occurs if a contracting party . . . fails to perform the engagement as specified in the contract . . . ."  UWork.com, Inc. v. Paragon Techs., Inc., 321 Ga. App. 584, 590 (2013) (citation omitted).  Defendants argue that Tanium's breach of contract claim against Yago should be dismissed because Tanium fails to allege that Yago violated the 2019 EIACA by actually soliciting, encouraging, or causing any of Tanium's customers to terminate or modify their relationship with Tanium, or that any such customers' business was diverted from Tanium causing damages.  Defs.' Mot. to Dismiss at 16-21.

23

With respect to whether there are sufficient allegations to plead a breach of

the 2019 EIACA, the Amended Complaint asserts the following:

(1)     "Yago has breached the 2019 EIACA by misappropriating Confidential
        Information belonging to Tanium."

(2)     "Yago has breached the 2019 EIACA by continuing to use
        Tanium's Confidential Information during his employment with
        Wiz and disclosing Tanium's Confidential Information to Wiz."

(3)     "Yago has breached the 2019 EIACA by contacting Tanium
        employees and soliciting them for employment with Wiz."

(4)     "Yago has breached the 2019 EIACA by soliciting business from
        Tanium's customers and/or active prospective customers and
        encouraging Tanium customers and/or active prospective
        customers to divert business from Tanium to Wiz."

(5)     "Yago breached the duty of good faith and fair dealing by failing
        to abide by the terms of the 2019 EIACA."

Am. Compl. ¶¶ 118-122.  Of the five paragraphs referenced above, Defendants

only challenge the substance of Paragraph 121, arguing that the complaint "pleads

no facts showing Yago actually solicited, encouraged, or caused any of Tanium's

customers to terminate or modify their relationship with Tanium."  See Defs.' Mot.

to Dismiss at 17.  The Amended Complaint contains specific allegations that Yago

recruited individual Tanium employees to join Wiz and communicated his efforts

at solicitation to Masturzo.  Am. Compl. ¶¶ 59-64.  Moreover, Tanium also has

sufficiently pleaded a breach of the 2019 EIACA's nondisclosure provisions by

24

exporting reports with Tanium' customer contact information and transmitting those reports to others.  Am. Compl. ¶¶ 48-56.  The well-pleaded facts and the reasonably drawn inferences from those allegations sufficiently plead a cause of action for breach of contract.  McGinley, 361 F.3d at 1330.[5]

Furthermore, the Amended Complaint sufficiently alleges damages based upon "irreparable harm in the form of the loss of the benefits of its bargains, loss of the exclusive use of its Confidential Information, loss of its competitive advantages in the marketplace, damage to customer relationships, loss of business opportunities, loss of relationships with its employees, loss of goodwill, and monetary damages in an amount to be determined."  Am. Compl. ¶ 123.

Accordingly, the Court **DENIES** Defendants' Motion to Dismiss as to Count III.

---

[5] Defendants' argument is belied by their own apparent admission: by stating that they "do not move to dismiss Plaintiff's breach of contract claim as it relates to the 2019 EIACA's employee non-solicitation provision (Count III)."  Defs.' Mot. to Dismiss at 2 n.1.

**C.     Tanium's Tortious Interference Claims are Properly Pleaded as Against Yago.[6]**

Although Tanium has pleaded them in one count (Count V), its claims for tortious interference with contractual and business relations are two separate claims. <u>Camp Creek Hosp. Inns, Inc. v. Sheraton Franchise Corp.</u>, 139 F.3d 1396, 1407 (11th Cir. 1998) ("[T]ortious interference with contract and business relationships state two independent but related claims").  Nevertheless, they share common elements.

> Tortious interference claims, whether asserting interference with contractual relations, business relations, or potential business relations, share certain common essential elements: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

<u>Kirkland v. Tamplin</u>, 285 Ga. App. 241, 243 (2007) (quoting <u>Disaster Servs. v. ERC P'ship</u>, 228 Ga. App. 739, 740 (1997)); <u>see also</u> <u>Piucci v. Clorox Sales Co.</u>, No. 1:19-cv-3759-TCB, 2021 WL 687256, at *2 (N.D. Ga. Jan. 11, 2021) (same).

> An essential element of a tortious interference with business relations claim is that the alleged tortfeasor induced a third party or parties not to enter into or continue a business relationship with the plaintiff.  A

---

[6] Because the Count has dismissed Count IV against Wiz based on improper claim-splitting, it need not consider whether that Count was properly pleaded.

> cause of action for intentional interference with contractual rights must
> be based on the intentional and non-privileged interference by a third
> party with existing contractual rights and relations.

Sweet City Landfill, LLC v. Lyon, 352 Ga. App. 824, 834 (2019) (quotation marks
and citations omitted).

Defendants contend that Tanium has pleaded no facts that show an unlawful
action taken by Yago to use its Confidential Information to solicit Tanium's
clients. Defs.' Mot. to Dismiss at 22. Defendants assert that Tanium did not
identify a single customer it has lost, nor did it allege that any customer
relationships were adversely affected by Yago's use of any Confidential
Information. Id. at 22-23. Tanium responds by asserting that it alleged in
sufficient detail Yago's use of Confidential Information for the purpose of
soliciting Tanium's customers and that specific evidence regarding lost customer
relationships is not required at the motion to dismiss stage. Tanium's Resp. at 15-
17.

### 1.    Customer Solicitation Involving Confidential Information

First, the Court finds Tanium's factual allegations describing customer
solicitation involving Confidential Information sufficient to overcome Defendants'
Motion. Tanium has pleaded that Yago stole, for use by himself and Wiz,
Confidential Information belonging to Tanium, and subsequently bragged about it

27

to his friends and colleagues.  Am. Compl. ¶¶ 52-58.  In particular, Tanium pleads

that Yago ran a Salesforce report for Masturzo on January 26, 2021, and created a

customer report of information about Tanium's customers in six states intended

from Klein.  Id. ¶¶ 48, 56-57, 65.  Tanium further pleads that Yago solicited

customers on behalf of Wiz while still employed with Tanium; for example, on

February 4, 2021,  Yago allegedly reached out to Ralph Lauren to set up a

demonstration of Wiz's product offerings and accessed Delta's customer account

screen.  Id. ¶¶ 66, 69.  The Amended Complaint further alleges that Wiz used

Confidential Information in an effort to solicit customers.  Id. ¶¶ 1, 7, 59, 66, 75,

79-83.  The requisite improper conduct for both tortious interference claims

"means wrongful action that generally involves predatory tactics such as physical

violence, fraud or misrepresentation, defamation, <u>use of confidential information</u>,

abusive civil suits, and unwarranted criminal prosecutions."  <u>Gordon Document</u>

<u>Prod., Inc. v. Serv. Techs., Inc.</u>, 308 Ga. App. 445, 449 (2011) (citations omitted

and emphasis added).  Defendants even recognize that the use of Confidential

Information is sufficient to satisfy the improper conduct element.  Defs.' Mot. to

Dismiss at 22 ("[I]mproper conduct means wrongful action that generally involves

predatory tactics such as . . . use of confidential information . . . .") (quoting

<u>Kirkland v. Tamplin</u>, 285 Ga. App. 241, 244 (2007)).  Drawing all reasonable

inferences in favor of the non-movant, it is reasonable to infer that Yago, when creating reports that extended beyond his Tanium job responsibilities and subsequently sending those reports to others did so with the intent to solicit Tanium customers for his future position at Wiz. Tanium therefore pleads sufficient facts to support its allegation that Yago acted inappropriately by soliciting customers.

### 2.   Employee Solicitation

The Court finds Tanium's allegations of Yago's employee solicitation further support Tanium's claims for tortious interference. Tanium alleged that Yago solicited several Tanium employees, including Klein and Finnerty, for employment at Wiz in direct violation of his contract. Am. Compl. ¶¶ 6, 59-64. Tanium further alleges that Yago and Masturzo reported on the success of their solicitation efforts to Jordan King, Wiz's Director Of Enterprise Accounts. Id. ¶ 61-62. Tanium also alleges that both Klein and Finnerty left Tanium to join Wiz. Id. ¶¶ 6, 40, 60-62. Finally, Tanium also alleges that it was damaged as a result of this conduct, as it lost employment of several of its highest-level sales employees. Id. ¶ 6.

Tanium has sufficiently pleaded facts regarding solicitation of employees that would allow a finding of improper conduct under both tortious interference

claims.  The Court finds this case is distinguishable from cases where plaintiffs failed to plead allegations supporting improper conduct.  <u>Compare</u> <u>Physiotherapy Assocs., Inc. v. ATI Holdings, LLC</u>, No. 2:17-CV-1226-KOB, 2019 WL 4415567, at *15 (N.D. Ala. Sept. 16, 2019) (finding that the complaint failed to state a claim when it alleged "only the conclusory statement that ATI wrongfully solicited Physiotherapy employees"), <u>and</u> <u>USI Ins. Servs. LLC v. Se. Series of Lockton Cos., LLC</u>, No. 1:20-CV-02490-SCJ, 2021 WL 912258, at *5 (N.D. Ga. Mar. 10, 2021) (granting a motion to dismiss because the plaintiff's allegations that the defendant caused confusion did not satisfy the "improper conduct" element of tortious interference), <u>with</u> <u>Cobb Theatres III, LLC v. AMC Ent. Holdings, Inc.</u>, 101 F. Supp. 3d 1319, 1344 (N.D. Ga. 2015) (holding that "[i]t is not entirely clear with Defendants' alleged conduct comes within the ambit of predatory and improper behavior proscribed by Georgia tort law, but the Court nevertheless finds Plaintiffs' allegations sufficient to endure a motion to dismiss," where the complaint alleged that defendants "sent a letter to film distributors threatening, at least implicitly, that the refusal to grant certain clearances would result in adverse consequences" and also "that Defendants have threatened landlords that they will make it difficult for AMC's competitors to license films if those competitors are allowed to lease space near an existing AMC theatre.").

Tanium's factual allegations of using Confidential Information and soliciting employees are sufficient to support its claims for tortious interference with contractual and business relations.  Accordingly, Defendants' motion to dismiss Count V as against Yago is **DENIED**.  TriEst Irrigation LLC v. Hiers, No. 7:18-CV-155 (HL), 2021 WL 2229059, at *11 (M.D. Ga. June 2, 2021) (denying a motion to dismiss on a tortious interference claim because the plaintiff "alleges conduct that would satisfy the elements of tortious interference, generally."); Ultimate Fitness Grp., LLC v. Anderson, No. 18-CV-60981, 2019 WL 8810367, at *3 (S.D. Fla. Mar. 13, 2019) (denying a motion to dismiss because, after evaluating all plausible inferences derived from the facts in the plaintiff's favor, the court could infer damages); Cal. Int'l Chem. Co. v. Neptune Pool Serv., Inc., 770 F. Supp. 1530, 1537 (M.D. Fla. 1991) ("Plaintiffs are only required to plead a short and plain statement of the claim showing that Plaintiffs' are entitled to relief.  Rule 8(a)(2), Fed. R. Civ. P. The Plaintiffs' allegations and reasonable inference that may be drawn therefrom readily satisfy this pleading requirement. Therefore, the motion to dismiss count 3 will be denied.").

**C.     Counts V and VI Are Not Preempted by the GTSA.**[7]

Defendants contend that Tanium's non-contract claims for tortious

interference with contractual and business relations against Yago (Count V), and

attorney's fees (Count VI) should be dismissed because they are preempted by the

GTSA.  Defs.' Mot. to Dismiss at 23.

The GTSA provides that a plaintiff may recover damages for the

misappropriation of trade secrets upon proof that (1) it possessed a trade secret,

and (2) the opposing party misappropriated the trade secret.  Diamond Power Int'l.,

Inc. v. Davidson, 540 F. Supp. 2d 1322, 1332 (N.D. Ga. 2007).  The GTSA has a

preemption clause which provides that it "shall supersede conflicting tort,

restitutionary, and other laws of this state providing civil remedies for

misappropriation of a trade secret."  O.C.G.A. § 10-1-767(a); accord Robbins v.

Supermarket Equip. Sales, LLC, 290 Ga. 462, 465 (2012).  However, the GTSA

does not generally affect "[c]ontractual duties or remedies, whether or not based

upon misappropriation of a trade secret" or "[o]ther civil remedies that are not

based upon misappropriation of a trade secret."  Penalty Kick Mgmt. Ltd v. Coca

---

[7] Once again, because the Court has dismissed Count IV pursuant to the doctrine of
claim-splitting, there is no need to consider whether Count IV is preempted by the
GTSA.

Cola Co., 318 F.3d 1284, 1296 (11th Cir. 2003) (quotation marks omitted);

O.C.G.A. § 10-1-767(b)(1)-(2).

The Georgia Supreme Court recently concluded that the GTSA preempts

claims that rely on the same allegations as a claim for misappropriation of a trade

secret, even if it turns out the allegedly misappropriated information is not a trade

secret. Robbins, 290 Ga. at 465.  The court explained that to preserve the GTSA's

exclusivity, "a plaintiff cannot be allowed to plead a lesser and alternate theory of

[recovery] simply because the information does not qualify as a trade secret under

the act." Id.  "[I]t would make little sense to go through the rigamarole of proving

information was truly a trade secret if a plaintiff could alternatively plead claims

with less burdensome requirements of proof." Diamond Power Int'l, 540 F. Supp.

2d at 1343.  Because the Robbins trial court's award of equitable relief was based

on the same conduct as the GTSA claim in that case, the Georgia Supreme Court

held that the trial court's award of equitable relief was a "manifest abuse of

discretion and must be reversed." Robbins, 290 Ga. at 467.

It is true that in Count V of the Amended Complaint, Tanium has allegations

that tie the interference with contractual and business relations to the

misappropriation of Tanium's Confidential Information, the same conduct alleged

in the GTSA claim (Count II).  Am. Compl. ¶¶ 107-09, 140, 142.  However, the

Amended Complaint also includes allegations that Yago undertook action that interfered with Tanium's customer relationships outside of his alleged misappropriation of trade secrets. Id. ¶¶ 66-68, 79, 142.

In Mauser USA, LLC v. Wilburn, the complaint alleged:

> During Defendant's employment with Mauser, he misappropriated Mauser's Proprietary Information with the express intention that Defendant would use it to solicit Mauser customers to leave Mauser and join Schuetz and Defendant would thereby unjustly enrich himself and cause willful and malicious injury to Mauser. Upon information and belief, during and after his employment with Mauser, Defendant solicited Mauser's customers not to enter into or continue a business relationship with Mauser. Defendant made the unlawful solicitations by using his position of trust at Mauser to have contact with customers and by using Mauser Proprietary Information stolen from Mauser to unlawfully solicit Mauser's customers and interfere with Mauser's relationship with its customers.

Mauser USA, LLC v. Wilburn, No. 1:19-CV-02361-AT, 2019 WL 8376209, at *5 (N.D. Ga. Nov. 22, 2019) (emphasis added). Yet the court denied a motion to dismiss based on the same preemption grounds, concluding:

> Although Mauser has plead the claim as being tied to the use of the alleged misappropriated "proprietary information," the Complaint alleges operative facts over and above those that would exclusively establish a claim for relief under the GTSA – the improper solicitation of Mauser's customers on behalf of Cardinal/ Schuetz. See Interra Int'l, LLC v. Al Khafaji, No. 1:16-CV-1523-MHC, 2017 WL 4866266, at *6 (N.D. Ga. Mar. 21, 2017) (denying motion to dismiss claim for tortious interference with business relations based on GTSA preemption because the complaint's allegations "go beyond alleging a misappropriation of any trade secrets or confidential information and contend that Defendants unlawfully interfered with a preexisting

contract and business relationship" but recognizing that following discovery the defendant may succeed in obtaining summary judgment if there is no genuine issue of material fact to establish that the tortious interference claim is no more than a "dressed-up" misappropriation of trade secrets claim); Candy Craft Creations, LLC v. Gartner, No. CV 212-091, 2015 WL 2408185, at *2 (S.D. Ga. May 19, 2015) (finding that the plaintiff[']s non-GTSA claims plead operative facts that went beyond those which would establish a claim for relief under the GTSA). Mauser's Complaint alleges that Wilburn, acting in concert with Swann and Kirkland, "solicited Mauser's customers not to enter into or continue a business relationship with Mauser." (Compl. ¶ 87.) The Court finds that Mauser's Complaint <u>alleges more than just a misappropriation of trade secrets and asserts that Defendant Wilburn unlawfully interfered with Mauser's preexisting customer business relationships</u>.

Id. (emphasis added). Therefore, the Court finds that the allegations underlying Count V against Yago are not preempted by the GTSA. See Pro. Energy Mgmt., Inc. v. Necaise, 300 Ga. App. 223, 226-27 (2009) ("PEM's complaint asserted that Allen assisted Necaise in his efforts to solicit PEM customers on behalf of LUMA prior to terminating his employment with PEM. Such claim does not compete with PEM's separate claim related to misappropriation of proprietary information under the GTSA and is not preempted by it.").

Similarly, the attorney's fee claim (Count VI) is based on facts beyond Defendants' efforts to misappropriate Confidential Information. Instead, this claim is premised on Yago's alleged bad faith actions, such as remaining at Tanium for two weeks after his resignation in order to be paid by Tanium to contact Tanium

customers on behalf of Wiz and to solicit Tanium employees to join him at Wiz. Am. Compl. ¶¶ 58-59.  Accordingly, Defendants' Motion to Dismiss Counts V and VI based upon GTSA preemption is **DENIED**.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motion to Dismiss [Doc. 45] is **GRANTED IN PART and DENIED IN PART**.  The motion is **GRANTED** as to Counts I, II, IV, V, and VI as against Defendant Wiz, Inc.  The Motion to Dismiss is **DENIED** as to Counts III, V, and VI as against Defendant Max Yago.  Based on the foregoing, it is further **ORDERED** that Defendant Wiz, Inc. is **DISMISSED** as a defendant in this case.

**IT IS SO ORDERED** this 30ᵗʰ day of December, 2021.

MARK H. COHEN
United States District Judge